IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CATHY FRANK, | : | |
| Plaintiff, | : | |
| v. | : | CA 2:11-00215-C |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Doc. 24 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record ("R.") (Doc. 12), the plaintiff's brief (Doc. 14), the Commissioner's brief (Doc. 15), and the arguments made by the parties at the November 17, 2011 Hearing, it is determined

that the Commissioner's decision denying the plaintiff benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

## Relevant Background

On December 28, 2006, the plaintiff filed an application for DIB and SSI, alleging a disability onset date of December 1, 2006, due to learning disabilities, high blood pressure, stress, headaches, scoliosis, and a herniated disc. (*See* R. 13[2] & 113.) After her application was denied on April 17, 2007 (*see* R. 48-59), she requested, on April 20, 2007, a hearing (*see* R. 60), which was held on May 14, 2009 (*see* R. 22-45). The Administrative Law Judge issued an unfavorable decision (R. 10-21) on May 29, 2009, and the plaintiff sought review from the Appeals Council on June 3, 2009 (*see* R 8-9). Review was denied by the Appeals Council on March 11, 2011 (*see* R 1-3)—making the ALJ's determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on April 29, 2011 (*see* Doc. 1).

## Standard of Review

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 24 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

[2] The plaintiff's application is not included as part of the administrative record filed in this Court.

2

In all Social Security cases, the plaintiff bears the burden of proving that he or she is unable to perform his or her previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history. *Id.* Once the plaintiff meets this burden, it becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although at the fourth step "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny plaintiff benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the

evidence." *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. 2010) (per curiam) (citing *Dyer v. Bernhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

## Discussion

On appeal to this Court, the plaintiff asserts four separate claims:

1. The ALJ erred in finding "(Rule Out) mild mental retardation" to be not severe;

2. The ALJ failed to fully and fairly develop the record regarding plaintiff's cognitive functioning;

3. The ALJ erred in failing to find the plaintiff meets Listing 12.05C; and

4. The ALJ erred in rejecting the opinion of the treating physician, Dr. Kamelmaz.

She has also filed a separate motion to remand (Doc. 16) on the basis of new evidence. Because the Court determines that the decision of the Commissioner should be reversed and remanded for further proceedings based on its consideration of the plaintiff's third claim,[3] there is no need for the Court to consider the plaintiff's other claims or the

---

[3] The Court is inclined, however, to address the plaintiff's first two claims on appeal, which, at least to the undersigned, appear related. As to the plaintiff's first ground: without conceding the propriety of the ALJ's conclusion that the plaintiff's alleged mental retardation was not severe due to lack of evidence to support a finding that she suffered from significant functional limitations, the Commissioner contends that because the ALJ found that both the plaintiff's back disorder and depression constituted severe impairments (*see* R. 15), the ALJ's alleged failure to properly consider—and find as severe—the plaintiff's mild mental retardation is of no consequence. The Commissioner relies on *Brescia v. Astrue*, 287 Fed. App'x 626 (10th Cir. 2010), in which the Tenth Circuit noted that it could "'easily dispose of' an

argument that the ALJ should have found additional impairments to be severe because '[t]he ALJ . . . made an explicit finding that [the claimant] suffered from severe impairments. That was all the ALJ was required to do in that regard[,]'" *id.* at 629 (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007)).  First, "the claimant's burden at step two is mild and only the most trivial of impairments may be rejected." *Zellner v. Astrue*, No. 308-cv-1205-J-TEM, 2010 WL 1258137, at *4 (M.D. Fla. Mar. 29, 2010) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)).  And while the "failure to find an impairment severe at step two can be harmless error if the ALJ considers the functional limitations of the impairment at later steps of the evaluation[,]" *id.* (quoting *Gatewood v. Comm'r of Soc. Sec.*, No. 6:09-cv-122-Orl-31 KRS, 2010 WL 455318, at *11 (M.D. Fla. Feb. 3, 2010)), "[t]here is [ ] no bright line rule that all errors at step 2 are harmless when the ALJ moves beyond step 2[,]" *Newton v. Astrue*, Civil Action No. 1:06-CV-1542-AJB, 2008 WL 915923, at *10-11 (N.D. Ga. Apr. 1, 2008) (noting that the job for a reviewing court is to, instead, "examine whether the error at step 2 infected another portion of the evaluation process").  Even though, here, the ALJ appears to consider the mental impairment later in the evaluation process, it appears that her failure, at step two, to find the mental impairment severe—or, moreover, further develop the record with respect to the plaintiff's mental impairment—may have "infected" the rest of the evaluation process.

For example, in addition to not treating the plaintiff as presumptively disabled under section 12.05(C) based on her valid IQ (R. 15) and additional "severe impairments: back disorder and depression" (*id.*)—which will be discussed more fully below—the ALJ chose to rely on a report, from Dr. Patterson, in which he found that the plaintiff has a Full Scale IQ of 63 (based on the administration of the WAIS-III) (R. 206) and stated that "Mental Retardation is offered as a rule out diagnosis secondary to adaptive skills that were not formally assessed" (R. 207), but then saw no need to consider whether additional testing was needed to "rule out" the alternative diagnosis.  *Cf. Griffin v. Barnhart*, 198 Fed. App'x 561, 564 (7th Cir. 2006) (in which the Seventh Circuit rejected an appellant's argument that the "ALJ improperly discounted evidence supporting his mental retardation claim," including "his placement in special education classes during childhood, his poor academic record, his illiteracy, and [a doctor's] post-examination note to 'rule out mild mental retardation' to show that he is mentally retarded," noting that the appellant, unlike the plaintiff in this case, "did not supply the ALJ with sufficient evidence supporting his claim[; f]or example, **he did not provide IQ, or any other test results**, which are required by statute to establish mental retardation") (emphasis added); *id.* (also rejecting the appellant's related argument that "that the ALJ abdicated his duty to fairly develop the record by not requesting a full psychological examination"—"The ALJ's duty to develop the record is not so sweeping that it can relieve an applicant entirely of his own responsibility for supporting his claim; instead, the ALJ must exercise some discretion in deciding when and how he should order additional evidence.  **Dr. O'Brien's note is the <u>only</u> evidence suggesting mental retardation**, but the notation to 'rule out mild mental retardation' was by no means a diagnosis.  Given the dearth of evidence supporting Griffin's claim, the ALJ did not abuse his discretion in refusing to order additional tests.  Substantial evidence in the record supported his conclusion that Griffin did not meet the listing for mental retardation.") (emphasis added); *see also Edwards v. Astrue*, 525 F. Supp. 2d 710, 713 & n.3 (E.D. Pa. 2007) (similar).

separate motion to remand (Doc. 16), which, as such, is deemed **MOOT**. *See Robinson v. Massanari*, 176 F. Supp. 2d 1278, 1280 & n.2 (S.D. Ala. 2001); *cf. Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

    A.    <u>Listing 12.05(C)</u>.

Under the law of this Circuit, a claimant bears the burden of proving that he or she has an impairment that meets or is medically equivalent to a listed impairment. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) ("We hold that when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency."); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. . . . To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'").

To establish presumptive disability under section 12.05(C), a claimant must present evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and

a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C). In addition, while the plaintiff must "also satisfy the 'diagnostic description' of mental retardation in Listing 12.05[,]"[4] *Cooper v. Commissioner of Soc. Sec.*, 217 Fed. App'x 450, 452 (6th Cir. 2007) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)), the law in this Circuit is clear that where, as here, a claimant has presented a valid IQ score of 60 to 70, she is entitled to the **presumption** that she manifested deficits in adaptive functioning before the age of 22, *see Hodges v. Barnhart*, 276 F.3d 1265, 1266 & 1268-1269 (11th Cir. 2001).

This presumption is, however, rebuttable. But the Commissioner is charged with the task of determining whether there is sufficient evidence (relating to plaintiff's daily life) to rebut the presumption. *See Grant v. Astrue*, 255 Fed. App'x 374, 375 (11th Cir. 2007) (per curiam). For example, in *Lowery v. Sullivan*, 979 F.2d 835 (11th Cir. 1992)—relied on by the Commissioner—the Eleventh Circuit recognized that a valid IQ score is not necessarily conclusive of mental retardation where the score is inconsistent with other evidence of claimant's daily activities, *see id.* at 837. Specifically, in the context of 12.05(C), the Eleventh Circuit held:

---

[4] "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05. "'Adaptive functioning' refers to a person's ability to perform activities of daily living and social functioning." *Fischer v. Barnhart*, 129 Fed. App'x 297, 301-02 (7th Cir. 2005) (citation omitted).

> To establish a disability under section 12.05(C), a claimant must present evidence of a valid verbal, performance, or full-scale I.Q. score of between 60 and 70 inclusive, and of a physical or other mental impairment imposing additional and significant work-related limitation of function. See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C) (1992). . . .
>
> Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities. *See Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985). This court, however, has recognized that a **valid I.Q. score need not be conclusive of mental retardation** where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior. *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (rejecting a claim of section 12.05(C) mental retardation where the claimant's **I.Q. score of 69** was inconsistent with evidence that he had **a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an administrative clerk, statistical clerk, and an algebra teacher**).

*Id.* at 837 (emphasis added); *see also Grant*, 255 Fed. App'x at 374 ("The mental retardation Impairment Listing in § 12.05C requires the claimant to demonstrate a 'significant subaverage general intellectual functioning with **deficits in adaptive functioning** initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22,' **as well as** a 'valid verbal, performance, or full scale IQ of 60 through 70 **and** a physical or other mental impairment imposing an additional and significant work-related limitation of function.'") (quoting §§ 12.00A, 12.05, 12.05(C)) (emphasis added).

  B. <u>Analysis</u>.

  Although, here, the ALJ references 20 C.F.R. Part 404, Subpart P, Appendix 1, she considers only section 12.04. (*See* R. 16.) The ALJ fails to cite to, discuss, or otherwise

8

reference section 12.05(C).  (*See* R. 13-21.)  Given the ALJ's third finding that "[t]he claimant has the following severe impairments: back disorder and depression" (R. 15) and her acceptance of the IQ testing (*see id.* ("In this case, I note that the claimant was administered the [WAIS-III] test on April 4, 2007, and the test results were considered by the examining sources to be a **reliable estimate of true abilities**.  Overall her full scale IQ was measured to be 63.") (emphasis added)), it is clearly error to not consider Listing 12.05(C) and, given the evidence before the ALJ, first find that a claimant is presumptively disabled.  Under the correct framework—which the ALJ should apply on remand—the plaintiff is entitled to this presumption and the burden falls on the Commissioner to rebut it.

Further, as indicated above, section 12.05(C) claims of mental retardation may be rejected where a claimant's score is inconsistent with other evidence in the record.  *See Lowey*, 979 F.2d at 837 (citing *Popp*, 779 F.2d at 1499 (noting that in addition to the IQ score, it is also appropriate to consider other evidence in the record, such as medical reports, daily activities, and behavior)).  And it appears that the ALJ may have skipped to this step without first discussing section 12.05(C) and its applicable presumption.

In any event, while "*Popp* is perhaps the strongest case for finding that an IQ score below 70 does not necessarily meet Listing 12.05C[, t]here are several other [decisions from courts in this Circuit] with facts somewhat like *Popp*."  *Loveday v. Astrue*, No. 1:10cv14-MP/WCS, 2010 WL 4942740, at *14 (N.D. Fla. Oct. 22, 2010), *report & recommendation adopted by* 2010 WL 4942733 (N.D. Fla. Nov 23, 2010)—

- *See Bischoff v. Astrue*, No. 07-60969-CIV, 2008 WL 4541118, at *20 (S.D. Fla. Oct 9, 2008) (affirming that Listing 12.05(C) not met where the claimant's IQ scores were lower than 70, **but** he had previously been employed as a parts manager and automobile mechanic—jobs that required technical knowledge and skills—supervising other employees **and** there was evidence that he was "faking" his IQ scores and offered inconsistent reports as to his level of education completed);

- *Davis v. Astrue*, Civil Action No. 2:07cv880-TFM, 2008 WL 2939523, at *3 (M.D. Ala. Jul 25, 2008) (affirming that Listing 12.05(C) not met where the claimant had an IQ score lower than 70, **but** had also **completed twelfth grade**, received training in cosmetology and secretarial skills, had a driver's license, was able to read, write, and perform simple math, and a consulting psychologist had **determined** that she was in the borderline level of intellectual functioning rather than mildly retarded);

- *Brown v. Astrue*, No. CV608-036, 2009 WL 2135005, at *5 & n.5 (S.D. Ga. Jul 15, 2009) (affirming that Listing 12.05(C) not met where the claimant had performance and full scale IQ scores below 70, **but** admitted in his work questionnaires "that while working as a carpenter he was a lead worker who supervised, hired, and fired employees, and regularly used machines and technical knowledge and skills, including taking measurements and making calculations" and also, "as a famer[,] supervised other workers");

- *Lyons v. Astrue*, No. 2:08-cv-614-FtM-29SPC, 2009 WL 1657388, at *10-11 (M.D. Fla. Jun 10, 2009) (affirming that Listing 12.05(C) not met where the claimant had, *inter alia*, a full scale IQ score of 65, **but** had also **obtained a high school diploma**, **did not take special education classes**, could take care of his personal needs, earned from $13,000 to $18,000 per year for 7 years, and there was **evidence that he was malingering when he took the intelligence tests**);

- **But see** *Durham v. Apfel*, 34 F. Supp. 2d 1373, 1380 (N.D. Ga. 1998), *report and recommendation subsequently adopted by District Judge* (reversing and remanding ALJ's determination that Listing 12.05(C) not met; concluding that the work history—primarily as a heavy laborer—of a claimant with a full scale IQ of 68 was not beyond the reach of a mildly retarded individual; and distinguishing *Popp*, stating: "Unlike Mr. Popp, Mr. Durham's work experience does not include technical jobs, but jobs as a laborer. He did not teach high school algebra, he worked as a tire repairer, laborer, kitchen helper and material handler. Mr. Durham did not go to college, he went to the fourth grade.") (record citation omitted);

- *Loveday*, 2010 WL 4942740, at *16 (finding the conclusion that IQ test scores "consistently below 70" were either "invalid or not adequately descriptive of Plaintiff's intellectual capabilities is not supported by substantial evidence" where the plaintiff worked as a laborer, tile setter, and doing lawn work, did not complete school, and was enrolled in special education classes; concluding: "There was not substantial evidence in this record to fail to give substantial weight to the IQ scores or to find those scores to be invalid.");

- *Alday v. Astrue*, No. 5:08cv217-SPM/WCS, 2009 WL 347722, at *3-7 (N.D. Fla. Feb. 11, 2009) (order adopting report and recommendation of Magistrate Judge) (in which the court reversed an ALJ's determination that a claimant with a verbal IQ of 66, a performance IQ of 73, and a full scale IQ of 66 did not meet Listing 12.05(C)—in which the ALJ found that the claimant was not mildly mentally retarded based, in part, on her daily activities of "having a boyfriend," sweeping and doing some laundry, taking care of a dog, and walking grandchildren to school—and ordered that the Commissioner grant the claimant's application for benefits);

- *Black v. Astrue*, 678 F. Supp. 2d 1250, 1261 (N.D. Fla. 2010) (in which the court **rejected** an ALJ's determination that a claimant's adaptive functioning was inconsistent with Listing 12.05(C) where the evidence showed that the claimant worked as a mushroom picker, could drive a motor vehicle for short distances, cook, took care of her personal needs, and handled cash without a bank account, but needed help from her family for other activities);

- *Monroe v. Astrue*, 726 F. Supp. 2d 1349, 1357-58 (N.D. Fla. 2010) (order adopting report and recommendation of the Magistrate Judge) ("The evidence from these forms shows that Plaintiff can function with reading and writing at a simple level, but this is consistent with her ability to work in a **fast food job**. Following the reasoning of the cases discussed above [the same cases set forth in this order], this is not substantial evidence to discount a valid I.Q. score. Since the I.Q. score is valid and the other criteria of Listing 12.05C were met, Plaintiff's applications for benefits should have been approved at step 3.") (emphasis added);

- *Cobb v. Barnhart*, 296 F. Supp. 2d 1295, 1297-98 (N.D. Ala. 2003) (similar).

Thus, following the reasoning of the cases above, it does not appear that the other evidence in this record—specifically, the plaintiff's daily activities and

11

behavior—is inconsistent with her IQ testing. That is, had the ALJ correctly applied the Listing 12.05(C) presumption, citing the plaintiff's ability to raise children, act as a primary caregiver, and hold steady employment in the past (which consisted of being an office cleaner and fast food worker)—particularly given her history of taking special education classes and failure to complete high school—as evidence that the IQ testing is "not adequately descriptive of Plaintiff's intellectual capabilities [would] not [have been] supported by substantial evidence." *Loveday*, 2010 WL 4942740, at *16.

- A claimant's level of educational attainment and whether he or she was enrolled in special education classes matters.

    *Compare Popp*, 779 F.2d at 1499; *Bischoff*, 2008 WL 4541118, at *20; *Davis*, 2008 WL 2939523, at *3; *Lyons*, 2009 WL 1657388, at *10-11, *with Durham*, 34 F. Supp. 2d at 1380; *Loveday*, 2010 WL 4942740, at *16.

- The nature of—*i.e.*, the level of skill necessary to undertake—the work performed by a claimant matters.

    *Compare Popp*, 779 F.2d at 1499; *Bischoff*, 2008 WL 4541118, at *20; *Davis*, 2008 WL 2939523, at *3; *Brown*, 2009 WL 2135005, at *5 n.5, *with Durham*, 34 F. Supp. 2d at 1380; *Loveday*, 2010 WL 4942740, at *16; *Black*, 678 F. Supp. 2d at 1261; *Monroe*, 726 F. Supp. 2d at 1357-58.

- A claimant's ability to perform tasks required for, or indicative of, independent living is not inconsistent with IQ scores lower than 70.

    *See Alday*, 2009 WL 347722, at *3-7; *Black*, 678 F. Supp. 2d at 1261.

- Whether there is evidence that a claimant was malingering or "faking" during her IQ testing matters. (None is present here.)

    *See Bischoff*, 2008 WL 4541118, at *20; *Lyons*, 2009 WL 1657388, at *10-11.

- Whether there is a **determination** that a claimant was in the borderline level of intellectual

    *See Davis*, 2008 WL 2939523, at *3.

functioning rather than mildly retarded matters. (There was no determination here.)

This only underscores the need of the ALJ, on remand, to further develop the record in this case or, following the correct framework pursuant to section 12.05(C), grant the plaintiff's application for benefits.

### Conclusion

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes Plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** this the 8th day of December, 2011.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**